UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

NATHANIEL NEYLAND                                                                                    PLAINTIFF

V.                                                                    CIVIL ACTION NO.: 3:09cv520-DPJ-FKB

HENLEY-YOUNG JUVENILE JUSTICE CENTER;
DARRON FARR, DIRECTOR; TONI FLANAGAN,
EXECUTIVE DIRECTOR; WILLIAM "BILL" SKINNER,
YOUTH COURT JUDGE; VERN GAVIN, COUNTY
ADMINISTRATOR; BRIDGET SMITH, PERSONNEL
DIRECTOR; CRYSTAL MARTIN, BOARD ATTORNEY                          DEFENDANTS

ORDER

This employment dispute is before the Court on the Motion for Summary Judgment [47] of Defendants Henley-Young Juvenile Justice Center; Darron Farr; Toni Flanagan; William "Bill" Skinner; Vern Gavin; Bridget Smith; and Crystal Martin. Also pending is Plaintiff Nathaniel Neyland's Motion for Sanctions [52]. The Court, having considered the submissions of the parties and applicable law, concludes that Defendants' Motion should be granted and Plaintiff's Motion denied.

I.      FACTS AND PROCEDURAL HISTORY

In 1995, Plaintiff Nathaniel Neyland was employed by the Hinds County Sheriff's Department as a detention deputy. In 2001, Neyland made a lateral move to the position of detention officer at the Henley-Young Juvenile Justice Center ("the Center"). At that time, Hinds County operated the Center under the direction of the County Administrator. That arrangement changed in January 2008, when Hinds County Youth Court Judge William Skinner assumed administration of the Center.

According to his Complaint, Neyland received a subpoena on July 31, 2008, directing him to report to the Circuit Court of Hinds County, Mississippi. Neyland was summoned to testify against the Center's director, Defendant Darron Farr, "because another officer filed charges against him for threatening." Pl.'s Compl. [1] ¶ 8. After the subpoena, but before Farr's August 20 trial date, Toni Flanagan, the Center's executive director, wrote Judge Skinner to advise that the Department of Public Safety's Monitoring Unit would visit the Center. Flanagan provided the memo at Farr's request, and informed Judge Skinner that one area of concern was compliance with a so-called "48-hour cooling-off" rule that required officers working in both adult and juvenile corrections to be off duty 48-hours before working with juveniles. Flanagan's letter also discussed a previously recommended suspension of Neyland for tardiness and other infractions. A few days later, Farr himself wrote Judge Skinner a memorandum recommending termination of Neyland's employment based on violation of the 48-hour rule. Judge Skinner countersigned his approval of the memorandum, and Neyland was terminated effective August 13, 2009. It appears from the record that Neyland filed a grievance and received a hearing, but that he did not receive all of the process he believed was due.

On August 28, 2009, Neyland filed a pro se complaint asserting causes of action based on retaliation in violation of an unspecified "statute"; violation of his Fourteenth Amendment rights to substantive due process, procedural due process, and equal protection; and state-law claims for intentional and negligent infliction of emotional distress. Neyland also referenced Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 in his Complaint, but never connected those federal statutes to a specific count. Nearly nine months after filing suit, Neyland's retained counsel filed

2

an Amended Complaint [15] that merely added a claim under ERISA. Neyland thereafter substituted his retained counsel.

After filing and then amending his Complaint, Neyland has done little to prosecute his claim. It appears from the docket that he conducted no formal discovery, and he missed several deadlines imposed by the Court. Most seriously, Neyland failed to file a timely response to Defendants' Joint Motion for Summary Judgment [47], prompting a Show Cause Order giving Neyland until February 10, 2011, to either respond or confess. Order [50] Feb. 2, 2011. The Court advised that "[f]ailure to timely respond to this Order will result in dismissal of Neyland's suit, with prejudice, for failure to prosecute his case." *Id.* (citing Fed. R. Civ. P. 41(b)). Inexplicably, Neyland failed to file a timely response. Instead, he filed a Response [51] four days late without seeking leave or offering explanation. Neyland then moved the Court to strike Defendants' summary-judgment Motion and award sanctions based on representations made in an affidavit attached to Defendants' Motion. *See* Pl.'s Mot. [52].

Finally, both parties referenced an employee "handbook" in their summary-judgment submissions, but the Court could not locate it in the record. The Court therefore ordered production of the document. Defendants complied, producing a document entitled "Hinds County, Mississippi Board of Supervisors Personnel Policies & Procedures Manual." Neyland never complied, leaving the Court to assume that the document Defendants produced was the "handbook" Neyland referenced in his summary-judgment Response—although his arguments suggest that there is either a different document or that he misstated its contents. At long last, Defendants' Motion for Summary Judgment is ready for consideration.

II.      STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

In the present case, it is important to note that conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997);

*Little*, 37 F.3d at 1075 (5th Cir. 1994) (en banc).  The 2010 amendments to Rule 56 now make this abundantly clear.  Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Moreover, Rule 56(c)(3) now states:  "Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record."  *Accord Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) ("We have explained that 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'") (citations and quotations omitted).

III.   ANALYSIS

   A.   Fourteenth Amendment Claims

The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, §1.  But because the Constitution creates no private cause of action, an aggrieved plaintiff must pursue such claims under 42 U.S.C. § 1983, as Neyland does here.[1]  To state a viable claim under § 1983, a plaintiff must demonstrate (1) that she was deprived of a right secured by the Constitution or the laws of

---

[1] Neyland also cites Title VII and § 1981 in his Complaint.  As for the former, there are no pled facts suggesting a Title VII claim, and Neyland makes no reference to such a claim in response to Defendants' Motion.  The § 1981 claim is evaluated under the same standard as § 1983.  *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989).

the United States, and (2) that the person depriving the plaintiff of this right acted under color of any statute of the State. *West v. Atkins*, 487 U.S. 42, 48 (1988).

        1.    Due Process

The Due Process Clause of the Fourteenth Amendment includes a procedural component and a substantive component. *Montgomery v. Mississippi*, 498 F. Supp. 2d 892, 910 (S.D. Miss. 2007) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Neyland seems to assert both. Procedural due process protects against "the deprivation by state action of a constitutionally protected interest in 'life, liberty or property'. . . *without due process of law*." *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Substantive due process "bars certain arbitrary, wrongful government actions" resulting in deprivation of a constitutional right or interest— "'regardless of the fairness of the procedures used to implement" the government actions. *Zinermon*, 494 U.S. 113, 125 (quoting *Daniels*, 474 U.S. at 331).

Significantly, both substantive and procedural due process claims require proof that the plaintiff suffered deprivation of interests "encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) (regarding procedural due process); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 (1985) (regarding substantive due process). Thus, Neyland's due process claims fail without the existence of a property interest.[2] Whether a property interest exists is determined under state law. *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989). And at-will

---

[2]*See Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984) ("Once created," a constitutionally protected property interest in employment "[can] not be destroyed . . . without providing the procedural and substantive protections guaranteed by the Fourteenth Amendment."); *see also Schaper v. City of Huntsville*, 813 F.2d 709, 716–717 (5th Cir. 1987) (recognizing that both procedural and substantive due process rights can be created by state law).

employees have no property interest in continued employment. *Bishop v. Wood*, 426 U.S. 341, 345 n. 8 (1976). The parties dispute whether Neyland was an at-will employee. The Court will assume, *arguendo*, that Neyland cleared this initial hurdle because his Fourteenth Amendment claims otherwise fail for lack of evidence establishing municipal liability under § 1983.

Neyland never specifically named Hinds County, Mississippi, in his Complaint. But properly construed, the Complaint asserts claims against the County. First, each individual defendant was named in his or her official capacity, which is the same as suing the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).[3] Second, the Center is not a proper party because it does not "enjoy a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (citation omitted). "Unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id*. at 313. There is nothing in the record suggesting that the Center has been so designated. Accordingly, Neyland's claims are against Hinds County, Mississippi.

---

[3]The Complaint itself does not indicate whether Neyland sued the individual defendants in their official or individual capacities, although providing their titles in the style suggests official-capacity claims. That said, Neyland testified in his deposition that he did not sue these defendants in their individual capacities and that he "just put their names on there for information purposes." Def.s' Mot. [47] Ex. B, Neyland Dep. 104. Neyland was represented by counsel during the deposition. And although his attorney made a failed effort to amend the Complaint after the deposition, that requested amendment was not designed to assert individual-capacity claims. Finally, Defendants argued in their Memorandum that Neyland had disavowed any individual capacity claims. Def.s' Mem. [49] at 1 n.1. Neyland responded that the individual defendants were "personally involved," but he ignored Defendants' observation that the Complaint failed to assert individual-capacity claims and that he disavowed any such claims in his deposition. To the extent his Response can be read as attempting to assert individual capacity claims, the Court does not consider claims raised for the first time in response to a summary-judgment motion. *See Gomez v. LSI Integrated LP*, 246 F. App'x 852, 854 (5th Cir. 2007).

Case 3:09-cv-00520-DPJ-FKB   Document 68   Filed 05/20/11   Page 8 of 17

Local governmental entities are subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Municipal liability cannot be sustained under a theory of respondeat superior." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (internal citations and quotations omitted). Municipal liability under § 1983 therefore requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

      a.    Policymaker

To sustain liability under § 1983, Neyland "must identify a policymaker with final policymaking authority." *Rivera*, 349 F.3d at 247; *see also Bowles v. Cheek*, 44 F. App'x 651, at *1 (5th Cir. 2002) (unpublished table decision) (affirming summary judgment where plaintiff failed to establish existence of a policymaker whose official policy was the moving force behind alleged violation); *Piotrowski*, 237 F.3d at 578–79 (noting that identification of policymaker who could be held responsible "is not an opaque requirement"). In this case, Neyland has not identified a specific policymaker, and it is not clear from the record where the final decisionmaking authority rested. While the County granted Judge Skinner substantial authority over the Center, it appears that his termination decision was reviewed at the county level. *See Worsham v. City of Pasadena*, 881 F.2d 1336, 1341 (5th Cir. 1989) ("The existence of effective review procedures prevents the employees from wielding final responsibility . . . ."). In any

event, the issue remains unclear on the record presented. Neyland has failed to meet his burden on this element of his claim.

          b.  Official Policy that was Moving Force Behind Violation

Neyland next contends that the County trumped up a reason for termination and then failed to follow the procedural steps required for termination. But he offers no record evidence of an officially adopted policy to violate his rights. In fact, he premises liability on the County's failure to follow the official policies it did adopt. The lack of an officially adopted policy is not, however, fatal. "Official policy" also includes:

> A persistent, widespread practice of [government entity] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [government entity] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [government entity] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam), *cert. denied*, 472 U.S. 1016 (1985). But to state such a policy, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Rivera*, 349 F.3d at 247 (internal citations and quotations omitted).

Defendants squarely raised this issue in their Motion, noting Neyland's deposition testimony that he could not identify a policy or custom that led to alleged constitutional violations. *See* Def.s' Mem. [49] at 15-16 (citing Pl.'s Dep. at 102–03). Neyland's summary-judgment Response attempted to remedy the deficiency by offering what he described as "Material Fact—County Policy." Pl.'s Resp. [51] at 12–13. The Response states in its entirety:

9

> 40)   The actions and inactions of Defendants, show a county policy of using the Handbook for its advantage, while simultaneously denying the authority of the Handbook when employees seek its protection.
>
> 41)   Further, the actions of Defendants demonstrate that the county does not require its employees to perform their lawfully prescribed duties, when an employee of sufficient rank has a personal vendetta.
>
> 42)   The personal actions and failures to act of each of these defendants in advancing Defendant Farr's conspiracy against Plaintiff, attempted co-Plaintiff, and others similarly and contemporaneously terminated rises to the level of creating a policy or custom within Henley-Young to circumvent the rules promulgated by the Hinds County Board of Supervisors. This *de facto* policy is the heart of Plaintiff's claim of constitutional violations, and serves to defeat Defendants' attempt to invoke governmental immunity. As such, Plaintiff has offered factual and plainly recognizable violations to support his claims against each individual defendant. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Pl.'s Resp. [51] at 12–13. These arguments seemingly relate to the isolated facts of Neyland's case rather than a "wide-spread practice" that would constitute a custom. *Webster*, 735 F.2d at 841. Regardless, Neyland cites no record evidence for any of these conclusory assertions, and none is apparent in the record. *See* Fed. R. Civ. P. 56(c)(3). Unsupported assertions and speculation cannot create a material question of fact. *TIG Ins. Co.*, 276 F.3d at 759. Thus, the Court finds that Neyland has failed to identify any evidence capable of creating a material question of fact regarding this essential element of his § 1983 Fourteenth Amendment claim.

      2.    Equal Protection

Neyland alleges in his Complaint that Defendants violated his right to equal protection under the law by terminating his employment due to the 48-hour rule. In his Response, Neyland also alleges—as part of his equal-protection claim—that the federal 48-hour rule does not exist. The record in this case does not contain any identification of the specific law referenced in Neyland's termination letter.

Traditionally, under the Equal Protection Clause, a law or rule is evaluated for disparate treatment or impact on a particular class of persons. *See Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 601 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others'") (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961); and also citing *Ross v. Moffitt*, 417 U.S. 600, 609 (1974) ("'Equal Protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable."); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes")). "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" *Engquist*, 553 U.S. 591, 602.

In the present case, Neyland offers no record evidence identifying a comparitor with whom he was treated differently. The claim fails on this basis alone. Moreover, as noted above, liability under § 1983 requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski*, 237 F.3d at 578. Neyland fails to direct the Court to any such evidence in support of an Equal Protection claim.

Finally, although Neyland claims that someone else suffered the same fate, he failed to cite any record evidence establishing the assertion, and none is apparent in the record. As such,

his claim would appear to assert a "class-of-one" theory of equal protection. But as Defendants noted, without response from Neyland, the Equal Protection Clause does not apply to the class-of-one theory in the context of public employment disputes. *Enquist*, 553 U.S. at 609 ("[R]atifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'") (quoting *Connick v. Myers*, 461 U.S. 138, at 154 (1983)).

> B.   Retaliation

As originally pled, it is difficult to determine the legal basis for the retaliation claim in Count I of the Complaint. Neyland merely states that Defendants' actions violated his "statutory rights." Compl. ¶ 26. In response to Defendants' summary-judgment Motion, Neyland appears to rely upon § 1983, claiming that the alleged retaliation violated his right to equal protection. Even as reconfigured, the claim still falls short under Rule 56.

Neyland contends that he and another employee were subpoenaed to testify in Defendant Farr's criminal trial and then terminated, whereas non-subpoenaed employees were retained. This is a different factual predicate than the equal-protection claim discussed above, but it fails for the same reasons—no policymaker or official policy. *Piotrowski*, 237 F.3d at 578. *See* Pl.'s Resp. [51] at 12-13. Even assuming Neyland had offered competent record evidence that he and/or others were fired as a result of subpoenas to testify in Defendant Farr's trial, it would be an isolated act that would not trigger the County's liability—there is no record evidence of any policy or wide-spread practice about which the County had knowledge. *Rivera*, 349 F.3d at 247.

The claim also lacks causation. "A *direct* causal connection must exist between the policy and the alleged constitutional deprivation. This connection *must be more than a mere 'but for' coupling* between cause and effect. To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the *moving force* behind it." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)) (emphasis in *Johnson*). Neyland asserts that he was discharged due to a policy of terminating subpoenaed employees under pretext. Such a policy would require knowledge on the part of a final policymaker that Neyland had been subpoenaed. But Neyland offers nothing other than bald assertion that anyone holding final policymaking authority knew about the subpoena. The subpoena itself, which the Court found attached to the original Complaint, merely establishes that Neyland had been compelled to testify. Nothing else in the record demonstrates that a decisionmaker with final policymaking authority was even aware of it.

Finally, as to a potential equal-protection claim, Neyland asserts that other subpoenaed employees were treated the same, thereby creating a class. But he offered no citation to any record evidence establishing that anyone else was subpoenaed, much less terminated because of it. And to the extent his argument is reduced to a "class-of-one" equal-protection theory, he again failed to identify any comparators—even if such a claim could be viable, which it is not. *See Enquist*, 553 U.S. at 609 (rejecting class-of-one equal protection claims regarding public employment). Therefore, Neyland's equal-protection claim should be dismissed with prejudice.[4]

---

[4] It is not clear whether Neyland contends that he was fired for merely receiving the subpoena or for something he had said or intended to say. If the latter, then one might expect him to advance a § 1983 First Amendment claim. Reading the Complaint very loosely might

13

Beyond the § 1983 context, Neyland's Response makes reference to Mississippi's public-policy exception to the employment-at-will doctrine. *See McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993). It is not at all clear that the retaliation count included such a claim given the alleged statutory violation. To the extent a common-law claim can be inferred, it must be dismissed for two reasons.

First, Neyland failed to give notice of the claim. *See* Miss. Code Ann. § 11-46-11(1) (2010). Neyland acknowledged in his deposition that he provided no notice, but he contends in his Response that the County had actual notice of his claim "since immediately after the wrongful termination." Pl.'s Resp. [51] at 13. Neyland does not explain this contention, but if he is referring to his request for a hearing, section 11-46-11(1) requires written notice "[a]fter all procedures within a governmental entity have been exhausted." Neyland cites no record evidence of "substantial compliance" and no legal authority supporting his position. With nothing more to go on, the Court finds that Neyland's state-law claims are barred.

Second, there is no evidence supporting a *McArn* claim. "[A]n employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *McArn*, 626 So. 2d at 607. But "the 'reporting of illegal acts' exception to the at-

---

allow an inference of a First Amendment claim in Count I, but Neyland makes no reference to the First Amendment in his Complaint, and the parties have not explored the issue in their submissions. First Amendment claims carry unique legal tests and require specific proof. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). Because neither party addressed the First Amendment, the Court will not infer such a claim. Regardless, the record is otherwise insufficient to establish a First Amendment retaliation claim because, *inter alia*, there is no record evidence indicating what Neyland would have said or whether it was a matter of public concern. *See id*.

will employment doctrine has been applied only when the illegal act actually had something to do with the business itself." *Jones v. Fluor Daniel Servs. Corp.,* 959 So. 2d 1044, 1047 (Miss. 2007).  In the present case, Neyland argues in his Response that his subpoenaed testimony would relate to an alleged "criminal assault" involving a co-worker, but there is no record evidence to support that assertion.  Instead, the only evidence related to the subpoena is the subpoena itself, which does not reveal the scope of the expected testimony.  Moreover, even if the Court were to accept Neyland's unsupported assertion regarding the nature of the testimony, there is no indication that the alleged assault had "something to do with the business itself."  *Id.*  Thus, the evidence is insufficient to survive Defendants' Motion on a *McArn* theory of recovery.

    C.    ERISA

Neyland's ERISA claim fails because, as Defendants argue, ERISA specifically excludes governmental plans from its purview.  *See* 29 U.S.C. § 1003(b)(1) (2006) ("The provisions of this subchapter shall not apply to any employee benefit plan if– (1) such plan is a governmental plan (as defined in section 1002(32) of this title)"); *id.* § 1002(32) ("The term 'governmental plan' means a plan established or maintained for its employees by the. . . government of any State or political subdivision thereof"); *id.* § 1321(b)(2); Miss. Code Ann. §§ 25-11-9 and 11 (2011) (describing coverage of Mississippi's Public Employees' Retirement System); *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995) ("Although recognized as a 'comprehensive and reticulated statute,' Congress excluded certain plans from ERISA coverage," including retirement plans established by State governments for their employees).

Neyland otherwise waived the claim by failing to respond to this portion of Defendants' Motion.  *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) ("If a party fails to assert a legal

reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.").

  D. Emotional Distress

Neyland asserted claims in his Complaint for negligent infliction of emotional distress and intentional infliction of emotional distress.  Defendants seek summary judgment as to both.  As noted above, Neyland failed to comply with the notice provisions of the Mississippi Tort Claims Act.  Miss. Code Ann. § 11-46-11(1).  Accordingly, these claims are due to be dismissed.  Even if he complied, the negligent-infliction-of-emotional-distress claim would still fall under the exclusivity provision of the Mississippi's Workers' Compensation Act.  Miss. Code Ann. § 71-3-9; *see McNeill v. City of Canton,* No. 3:06cv74-DPJ-JCS, 2008 WL 249437, at * 15 (S.D. Miss. Jan. 29, 2008), *aff'd* 291 F. App'x 670 (5th Cir. 2008) (holding that negligent-infliction-of-emotional-distress claims are barred).[5]

  E. Miscellaneous Issues

Defendants contend that this case should be dismissed because Neyland responded to their Motion four days after the deadline set in this Court's Show Cause Order without offering explanation or seeking an extension.  On the same day Neyland filed his dilatory Response, he filed his own Motion for Sanctions [52], in which he sought an order holding Defendants in contempt, striking the Motion for Summary Judgment, and awarding other sanctions.

Starting with Neyland, there is a history of late responses and ignored orders.  While the conduct was unprofessional, there is no apparent prejudice, the failures were not attributable to

---

[5]The Court declines to address the intentional-infliction-of-emotional-distress claim on the merits.

Neyland, and lesser sanctions may have been sufficient had the case otherwise survived Defendants' Motion.  The Court therefore concludes that dismissal for these procedural failures is not warranted.  *See Rogers v. Kroger Co.*, 669 F.2d 317 (5th Cir. 1982) (reversing dismissal for failure to prosecute).

As for Defendants' alleged conduct, Neyland attacks Exhibit "S" to Defendants' Motion—the Declaration of Bridget Smith.  Smith, the personnel director for the Hinds County Board of Supervisors, declared that when Judge Skinner assumed responsibility at the Center, he adopted the County's employee handbook, sans the "Discipline & Grievance" section.  Def.s' Mot. [47] Ex. "S" ¶ 4.  Neyland contends, with no relevant supporting authority, that "Smith's Declaration attempts to usurp authority granted solely to the Board of Supervisors to establish the general policies of the county and its administration."  Pl.'s Mot. [52] ¶ 6.  Whether or not the Center adopted the County's policies was an issue Neyland disputed.  Smith's declaration, based on professed personal knowledge as the personnel director, is a matter of evidence, not a usurpation of authority.  The Motion is denied.[6]

IV.    CONCLUSION

Based on the foregoing, the Court finds that Defendants' Motion for Summary Judgment [47] should be GRANTED.  Neyland's Motion for Sanctions [52] is DENIED.  A separate judgment will be entered pursuant to Rule 58.

**SO ORDERED AND ADJUDGED** this the 20th day of May, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[6]Defendants' Response [62] to Neyland's Motion seeks sanctions under Rule 11, but Defendants filed no separate motion as required by Local Rule 7(b)(3)(C).  Thus, there technically is no motion before the Court.